UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

MICHAEL A. FORCE                                                   PLAINTIFF

v.                                                      CIVIL ACTION NO. 5:14CV-P4-R

DUKE PETTIT *et al*.                                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael A. Force, a prisoner proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, the Court will dismiss the official-capacity claims for monetary damages, allow Plaintiff 30 days to amend his complaint to add a medical treatment claim, and allow the other claims to proceed as discussed below.

**I. STATEMENT OF THE CASE**

Plaintiff brings this action against three Defendants: (1) Duke Pettit, the Deputy Warden at Kentucky State Penitentiary [KSP]; (2) Virgil K. Hughes, a Correctional Officer at KSP; and (3) Gary Peters, also a Correctional Officer at KSP. Plaintiff indicates that he is suing Defendants in both an individual and official capacity. As relief, Plaintiff seeks monetary and punitive damages as well as injunctive and declaratory relief. The injunctive relief he seeks is an order directing he be provided medical care for his injured neck and back and directing that Defendants "[k]eep away from plaintiff and not be allowed to work where defendants could cause more harm to plaintiff or retaliate against plaintiff for bringing suit against them." As

declaratory relief, Plaintiff seeks a declaratory judgment stating that Defendants violated his Eighth Amendment rights.

According to the complaint, Plaintiff was removed from his cell by Defendants Hughes and Peters on October 25, 2013, so that maintenance could repair his cell light. Plaintiff was handcuffed and shackled and then asked to stand "against the wall on the walkway straight across from his cell." According to Plaintiff, while he was standing against the wall, he "tried to ask defendant Peters a question, but defendant Peters told plaintiff to shut up." Plaintiff states that Defendant Hughes then started calling Plaintiff an "inmate Rat" and telling Plaintiff "'he got him' and thats why plaintiff got his ass kicked (Defendant Hughes was implying about when he opened plaintiffs cell door and another inmates cell door at the same time on c-walk.)." According to Plaintiff, Defendant Hughes continued to put Plaintiff down so Plaintiff finally told Defendant Hughes that his wife "looks like she has Down Syndrome." Plaintiff states that Defendant Hughes again made references to Plaintiff being a "Fat rat" and told Defendant Peters "to take plaintiff down."

According to Plaintiff, thereafter a physical altercation occurred between Plaintiff and Defendants Hughes and Peters. Plaintiff states that these two Defendants jumped on him and "took him to the ground." Defendant Peters, according to Plaintiff, put Plaintiff in a choke hold and started twisting his neck causing Plaintiff not to be able to breathe. Plaintiff states that Defendant Hughes "muged and shoved his hand in plaintiffs mouth and busted plaintiffs lip," and then he "started bending plaintiffs rest trying to brake it." According to Plaintiff, "Defendant Peters continued to choke [him] and twisted his next until Sgt. McGehee came on the walk . . . ."

Plaintiff states that Sgt. McGehee ordered Defendants Peters and Hughes off of Plaintiff and to get off the "walk and away from plaintiff."

According to Plaintiff, he "walked to the walk shower," and once secured in the shower area, he was seen by the nurse for his injuries. Plaintiff states that he had "blood on his hand and mouth." Plaintiff states that as a result of this physical altercation, he sustained neck and back injuries and still suffers from pain in those areas.

Plaintiff states that weeks prior to the above-described incident, he had told Defendant Pettit "that he was having problems with defendant Hughes and that defendant Hughes has threatened him numerous times." He states that he further informed Defendant Pettit that "it was his belief that defendant Hughes 'is out to get me.'"

Plaintiff alleges that "[t]he physical abuse of the plaintiff by defendants Hughes and Peters violated the plaintiff's rights under the Eighth Amendment to the united states consitution." As for Defendant Pettit, Plaintiff alleges that his "failure to take action to curb the physical abuse of prisoner violated the plaintiffs rights under the Eighth Amendment to the united states consitution."

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*,

490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. LEGAL ANALYSIS

### A. *Official-Capacity Claims*

Under the Eleventh Amendment to the U.S. Constitution,[1] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

The Eleventh Amendment also bars damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *McCrary v. Ohio Dep't Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th

---

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity).

However, Plaintiff also seeks declaratory relief and prospective injunctive relief against Defendants. Injunctive and declaratory relief are not barred by Eleventh Amendment immunity. *See McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000) (finding that "[t]he district court correctly determined that the Eleventh Amendment permits prospective injunctive relief but not damage awards, for suits against individuals in their official capacities under 42 U.S.C. § 1983").

Accordingly, the official-capacity claims for monetary damages against all three Defendants will be dismissed from this action. The official-capacity claims for declaratory relief and injunctive relief seeking an order keeping Defendants Hughes and Peters away from Plaintiff will proceed. That portion of the injunctive relief seeking an order directing that Plaintiff be provided medical treatment will be discussed below.

## B. Individual-Capacity Claims

### 1. Excessive-Force Claims Against Defendants Hughes and Peters

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* at 9. Of course, not "every malevolent touch by a prison guard gives rise to a federal cause of action," *id.* at 9, and "*de minimis* uses of physical force" do not support a constitutional claim "provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Id.* at 10 (citations and internal quotation marks omitted). Furthermore, "[p]rison

6

administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 548 (1979).

In evaluating an excessive-force claim, the court should consider the extent of injury suffered by an inmate in determining whether the use of force was wanton and unnecessary, although "[t]he absence of serious injury . . . does not end [the inquiry]." *Hudson v. McMillian*, 503 U.S. at 7. Other relevant factors in evaluating an excessive-force claim include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Upon review, the Court will allow the excessive-force claims against Defendants Hughes and Peters to proceed.

### 2. *Failure-To-Protect Claim Against Defendant Pettit*

"Prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another." *Farmer v. Brennan*, 511 U.S. 825, 858 (1994) (Thomas, J. concurring). As a result, some level of prison violence is unavoidable no matter what precautions are taken and officers cannot be expected to prevent every assault before it occurs or to stop every assault in progress before injuries are inflicted. *Id.* at 858-59. "[A] prison official may be held liable . . . for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

A failure-to-protect claim has both an objective and subjective component. First, "to establish a constitutional violation based on failure to protect, a prison inmate . . . must show that

7

the failure to protect from risk of harm is objectively 'sufficiently serious.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. at 833). "The inmate must show that 'he is incarcerated under conditions posing a substantial risk of serious harm.'" *Id.*

Second, "a plaintiff also must show that prison officials acted with [subjective] 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Farmer v. Brennan,* 511 U.S. at 834). A plaintiff must show "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. at 835 (citation and quotations omitted). The subjective requirement is met only where a plaintiff demonstrates that prison officials acted with "deliberate indifference" to a substantial risk of harm. An official is deliberately indifferent where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id.* at 838. In analyzing the subjective component, a district court should consider each defendant's state of mind individually, not collectively. *Bishop v. Hackel*, 636 F.3d at 767.

Additionally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. at 844. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause." *Id.* at 845.

Upon consideration, the Court will allow the failure-to-protect claim against Defendant Pettit in his individual capacity to proceed.

## C. *Request for Medical Treatment*

In this action, Plaintiff seeks an injunction ordering Defendants Hughes and Peters "or their agents" to "[i]mmediately arrange for the plaintiff to be provided medical care for his injured neck and back." Plaintiff states in his complaint that he sustained neck and back injuries as a result of the alleged use of excessive force by Defendants Hughes and Peters. He further states that he was seen by the nurse for treatment of the alleged injuries shortly after the incident about which he complains occurred. Plaintiff includes no factual allegations in his complaint about any lack of medical treatment or who he contends is responsible for failing to provide him medical treatment. Thus, the Court will not construe Plaintiff's complaint as alleging an Eighth Amendment claim for deliberate indifference to a serious medical need. However, the Court will provide Plaintiff with time to amend his complaint to include such a claim, if he so desires. *See LaFountain v. Harry*, 716 F.3d 944, 950 (6th Cir. 2013) (holding "that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA" [Prison Litigation Reform Act]).

Accordingly, **Plaintiff has 30 days from the date of this Memorandum Opinion and Order within which to move to amend his complaint to include an Eighth Amendment claim for deliberate indifference to a serious medical need**. Failure to do so will result in a dismissal of Plaintiff's request seeking injunctive relief in the form of an order directing medical care for his neck and back.

## IV. ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the following claims shall proceed beyond initial review under § 1915A: (1) the official-capacity claims for declaratory relief and injunctive relief seeking an order directing that Defendants Hughes and Peters keep away from Plaintiff; (2) the individual-capacity claims against Defendants Hughes and Peters alleging the use of excessive force in violation of the Eighth Amendment; and (3) the individual-capacity claim against Defendant Pettit alleging a failure to protect.

**IT IS FURTHER ORDERED** that the official-capacity claims against all three Defendants for monetary damages are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary damages against Defendants who are immune from such relief.

**IT IS FURTHER ORDERED** that **Plaintiff has 30 days from the entry date of this Memorandum Opinion and Order within which to amend his complaint, if he so desires, to include details in support of an Eighth Amendment claim for deliberate indifference to a serious medical need and to include any defendants he contends are responsible for this alleged constitutional violation**. Plaintiff's failure to file an amended complaint as to his medical treatment claim within 30 days **will result in dismissal of his request seeking injunctive relief directing that he receive medical care.**

The **Clerk of Court** is **DIRECTED** to send Plaintiff a § 1983 form affixing this case number on it for Plaintiff's use in amending the medical treatment claim. The **Clerk of Court** is

**further DIRECTED** to send Plaintiff a blank summons form with this case number affixed thereto.

The Court will enter a separate Scheduling Order governing the development of the continuing claims. In permitting these claims to continue, the Court passes no judgment on the merits and ultimate outcome of the action.

Date:

cc: Plaintiff, *pro se*
 Defendants
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.003