UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00004-TBR

MICHAEL FORCE                                                                      Plaintiff

v.

DUKE PETTIT, *et al.*                                                              Defendants

**MEMORANDUM OPINION**

Presently pending before the Court are the following Motions:

(1) Plaintiff Michael Force's Motion for Temporary Restraining Order and Preliminary Injunction, (Docket No. 3);

(2) Plaintiff's Motion for Reconsideration, (Docket No. 14);

(3) Plaintiff's Motion for Leave to File an Amended Complaint, (Docket No. 15);

(4) Defendants Duke Pettit, Virgil K. Hughes, and Gary Peters' Motion for Summary Judgment, (Docket No. 16); and

(5) Defendants' Motion to Hold in Abeyance Deadline for Response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (Docket No. 17).

These matters now are ripe for adjudication. For the reasons that follow, the Court will GRANT Defendant's Motion for Summary, (Docket No. 16), DENY Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (Docket No. 3), and DENY as moot all other pending Motions, (Docket Nos. 14; 15; 17).

BACKGROUND

Plaintiff, an inmate at Kentucky State Penitentiary (KSP), filed this action on January 13, 2014, pursuant to 42 U.S.C. § 1983 against three defendants: (1) Duke Pettit, Deputy Warden at KSP; (2) Virgil Hughes, a correctional officer at KSP; and (3) Gary Peters, also a correctional officer at KSP. (*See* Docket No. 1.) According to his Complaint, Plaintiff was removed from his cell by Defendants Hughes and Peters on October 25, 2013, so that maintenance could be performed on a light in the cell. (Docket No. 1, at 5.) Plaintiff was handcuffed and shackled and then asked to stand "against the wall on the walkway straight across from his cell." (Docket No. 1, at 5.) Plaintiff says that while he was standing against the wall, he "tried to ask defendant Peters a question, but defendant Peters told plaintiff to shut up." (Docket No. 1, at 5.) Plaintiff states that Defendant Hughes then started calling Plaintiff an "inmate Rat" and telling Plaintiff "'he got him' and thats why plaintiff got his ass kicked." (Docket No. 1, at 5.) According to Plaintiff, Defendant Hughes continued to put Plaintiff down, so Plaintiff finally told Defendant Hughes that his wife "looks like she has Down Syndrome." (Docket No. 1, at 6.) Plaintiff states that Defendant Hughes again made references to Plaintiff being a "Fat rat" and told Defendant Peters "to take plaintiff down." (Docket No. 1, at 6.) Thereafter, Plaintiff says a physical altercation occurred between him and Defendants Hughes and Peters. Plaintiff states that these two Defendants jumped on him and "took him to the ground." (Docket No. 1, at 6.) Defendant Peters, according to Plaintiff, put him in a choke hold and started twisting his neck causing him not to be able to breathe. Plaintiff states that Defendant Hughes "muged and shoved his hand in plaintiffs mouth and busted plaintiffs lip," and that he "started bending plaintiffs rest trying to brake it." (Docket No.

1, at 6.) Plaintiff says that "Defendant Peters continued to choke [him] and twisted his next until Sgt. McGehee came on the walk." (Docket No. 1, at 6.) Plaintiff states that Sgt. McGehee then ordered Defendants Peters and Hughes to get off of Plaintiff and to walk away.

According to Plaintiff, he "walked to the walk shower," and once secured in the shower area, he was seen by the nurse for his injuries. (Docket No. 1, at 6.) Plaintiff states that he had "blood on his hand and mouth." (Docket No. 1, at 6.) Plaintiff alleges that as a result of this physical altercation, he sustained neck and back injuries and still suffers from pain in those areas. Plaintiff also states that weeks prior to the above-described incident, he had told Defendant Pettit "that he was having problems with defendant Hughes and that defendant Hughes has threatened him numerous times." (Docket No. 1, at 6-7.) He claims that he further informed Defendant Pettit that "it was his belief that defendant Hughes 'is out to get me.'" (Docket No. 1, at 7.)

Plaintiff alleges that "[t]he physical abuse of the plaintiff by defendants Hughes and Peters violated the plaintiff's rights under the Eighth Amendment to the united states consitution." (Docket No. 1, at 7.) As for Defendant Pettit, Plaintiff alleges that his "failure to take action to curb the physical abuse of prisoner violated the plaintiffs rights under the Eighth Amendment to the united states consitution." (Docket No. 1, at 7.)

Upon initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court dismissed Plaintiff's official-capacity claims for monetary damages but permitted the following claims to proceed: (1) the official-capacity claims for declaratory relief and injunctive relief seeking an order directing

Defendants Hughes and Peters to keep away from Plaintiff; (2) the individual-capacity claims against Defendants Hughes and Peters alleging the use of excessive force in violation of the Eighth Amendment; and (3) the individual-capacity claim against Defendant Pettit alleging failure to protect. (Docket No. 10, at 10.) The Court further allowed Plaintiff 30 days to amend his Complaint to include details in support of an Eighth Amendment claim for deliberate indifference to his serious medical needs and to include any defendants he contends are responsible for that alleged constitutional violation. (Docket No. 10, at 10.) Plaintiff timely filed a Motion for Leave to File an Amended Complaint on February 24, 2014. (Docket No. 15.) In his Proposed Amended Complaint, however, Plaintiff did not elaborate on his Eighth Amendment deliberate indifference claim; instead, he merely affirmed that he sought monetary damages relative to his surviving individual-capacity claims. (Docket No. 15-1.) Along with his Motion for Leave to File an Amended Complaint, Plaintiff also filed a Motion for Reconsideration of the Court's Order on initial review, apparently misconstruing that Order as dismissing all of his claims for monetary damages. (*See* Docket Nos. 14; 14-1.)

In relation to his allegations against Defendants Hughes and Peters and the events of October 25, 2013, Plaintiff submitted Grievance No. 13-10-052-R, in which he claimed that Defendants Hughes and Peters used unnecessary force against him. (Docket No. 19-2, at 2.) That grievance was rejected on November 1, 2013, on the basis that the issue raised was nongrievable "due to disciplinary" because a disciplinary hearing concerning the matter was pending. (Docket No. 19-2, at 2, 4.) In rejecting his grievance, Plaintiff was instructed in writing, "You can appeal this action through/after court call." (Docket No. 19-2, at 2.)

Plaintiff submitted another grievance, Grievance No. 13-11-027-G, on November 18, 2013. (Docket No. 19-2, at 6-7.) In that grievance, Plaintiff raised a number of complaints, ranging from threats received from other inmates to excessive write-ups by Defendant Hughes. Plaintiff also claimed that Defendant Hughes was cursing him, calling him names, and refusing to take him to court call. (*See* Docket No. 19-2, at 7.) Though not specifically, it appears that Grievance No. 13-11-027-G also may mention the alleged October 25 altercation with Defendants Hughes and Peters. (*See* Docket No. 19-2, at 6-7.) That grievance was rejected on December 2, 2013, on the basis that the issues raised were nongrievable due to a pending disciplinary proceeding. (Docket No. 19-2, at 6, 9.)

Plaintiff states that he went to the prison court call on December 26, 2013, and that at that time the pending disciplinary charges were dismissed. (Docket No. 19-1, at 2.) Plaintiff claims that because the disciplinary matter was dismissed and because he was unable to obtain a copy of the dismissed disciplinary report, he was not allowed to appeal his grievances further. (Docket No. 19-1, at 2.)

STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). "[T]he

mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Additionally, the Court acknowledges that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). The duty to be less stringent with *pro se* complainants, however, "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted), and the Court is not required to create a claim for a *pro se* plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the "courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest argument and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

DISCUSSION

**I.  Plaintiff's Motion for Reconsideration, (Docket No. 14), and Motion for Leave to File an Amended Complaint, (Docket No. 15)**

As noted above, Plaintiff's Motion for Reconsideration, (Docket No. 14), evinces a misunderstanding of the Court's rulings on initial review in that the individual-capacity monetary damages claims Plaintiff seeks to have reinstated were not in fact dismissed. Similarly, Plaintiff's Proposed Amended Complaint, (Docket No. 15-1), merely restates the same claims the Court allowed to go forward after initial review. As such, both of these Motions, (Docket Nos. 14 & 15), will be DENIED as moot.

**II.  Defendants' Motion for Summary Judgment, (Docket No. 16)**

Defendants move for summary judgment, arguing that Plaintiff failed to properly exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires a prisoner to exhaust all available administrative remedies before commencing an action with respect to prison conditions. § 1997e(a). The United States Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218 (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Accordingly, an inmate must demonstrate that he has exhausted all available administrative remedies; when he fails to do so, dismissal of the complaint is appropriate. *E.g.*, *Burden v. Price*, 69 F. App'x 675, 676 (6th Cir. 2003).

At all times pertinent to this action, the Kentucky Department of Corrections (KDOC) has had a set of policies and procedures in place governing inmate grievances. Corrections Policy & Procedure (CPP) 14.6(I)(J) outlines a four-step process for the filing and adjudication of inmate grievances. (Docket No. 16-1, at 7-13.) At the first step, an informal resolution attempts to resolve the inmate's properly filed grievance. (Docket No. 16-1, at 7-10.) The policy requires that the initial grievance must be filed within 5 days after the complained-of incident occurs. (Docket No. 16-1, at 8.) If a grievant is dissatisfied after step 1, he may request a review by the Grievance Committee. (Docket No. 16-1, at 10-12.) At this second step, the Grievance Committee reviews the grievance and makes a written recommendation. (Docket No. 16-1, at 10-12.) If a grievant still is dissatisfied, he may appeal the grievance to the Warden at step 3. (Docket No. 16-1, at 12.) Finally, to conclude the process, if the grievant is dissatisfied with the Warden's decision, at step 4 he may appeal to the Commissioner of the KDOC. (Docket No. 16-1, at 12-13.)

Based on these procedures, Defendants argue that Plaintiff failed to exhaust his administrative remedies for each of his remaining claims. The Court agrees. Plaintiff timely submitted Grievance No. 13-10-052-R in relation to his excessive force claims against Defendants Hughes and Peters. However, Plaintiff has submitted no evidence to suggest that he appealed the resolution of that grievance beyond step 1 as required by CPP 14.6(I)(J). To the extent Grievance No. 13-11-027-G reasserts claims in relation to the October 25 incident and Plaintiff's excessive force claims, there likewise is no evidence to suggest that Plaintiff appealed that grievance any further. Additionally, neither grievance raises any claim relative to whether Defendant Pettit failed to protect

Plaintiff. Plaintiff's claim that he was not allowed to appeal his grievances further because the disciplinary matter was dismissed and because he was unable to obtain a copy of the dismissed disciplinary report are unavailing. In sum, the record is clear that Plaintiff failed to exhaust all available administrative remedies before commencing this action. As such, Defendants' Motion for Summary Judgment, (Docket No. 16), will be GRANTED.

**III.** **Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (Docket No. 3), and Defendants' Motion to Hold in Abeyance Deadline for Response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (Docket No. 17)**

In his pending Motion for Temporary Restraining Order and Preliminary Injunction Motion, Plaintiff seeks an injunction "to ensure that defendants cause [him] no further harm or retaliate against [him] and that [he] receive necessary medical care." (Docket No. 3-1 at 1.) Having found that Plaintiff failed to properly exhaust his administrative remedies prior to filing this action, this Motion must likewise be dismissed. But regardless of his failure to exhaust, Plaintiff would not be entitled to the injunctive relief his Motion seeks.

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Accordingly, "[t]he granting or denial of a preliminary injunction is within the sound judicial discretion of the trial court." *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 260–61 (6th Cir. 1977).

> In determining whether to issue a preliminary injunction, the district court is required to consider four factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction; (3) whether a preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest.

*Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

Although no single factor is controlling when determining whether a preliminary injunction should issue, the likelihood of success on the merits is often the predominant consideration. *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal."); *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("[W]hile, as a general matter, none of [the] four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed."). With respect to this first element—a showing of a strong likelihood of success on the merits—the Sixth Circuit advises that "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *accord Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) ("As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.").

Furthermore, "[d]espite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the district court, equity has traditionally required such irreparable harm before an interlocutory injunction may be issued." *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 103 (6th Cir. 1982). To establish immediate and irreparable harm there must be an actual, viable, presently existing threat of serious harm. *Cabinet for Workforce Dev.*, 2012 WL 5289659, at *3 (citing *Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness of Mass.*, 649 F.2d 71, 74 (1st Cir. 1981)). A plaintiff must show injury that is not remote or speculative, but is actual and imminent. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *Abney*, 443 F.3d at 552. The injury must be of such imminence that there is a clear and immediate need for relief in order to prevent harm. *Evans v. Wilson*, 2011 WL 5509543, at *2 (W.D. Ky. Nov. 10, 2011) (citing *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

Plaintiff has not met his burden of showing that a preliminary injunction should be issued. Principally, Plaintiff has not shown a likelihood of success on the merits, nor has he shown that he would suffer irreparable harm absent injunctive relief. Indeed, upon initial review the Court allowed Plaintiff 30 days to amend his Complaint to include details in support of an Eighth Amendment claim for deliberate indifference to his serious medical needs. (Docket No. 10, at 10.) But despite filing a Motion for Leave to File an Amended Complaint and Proposed Amended Complaint, Plaintiff did not elaborate further on these claims or his need for medical care. (*See* Docket Nos. 15; 15-1.) Therefore, even if Plaintiff had properly exhausted his available administrative remedies,

the Court finds his Motion for Temporary Restraining Order and Preliminary Injunction without merit.

For these reasons, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (Docket No. 3), will be DENIED. Because the Court finds Plaintiff's Motion without merit, no response by Defendants is necessary. Accordingly, Defendants' Motion to Hold in Abeyance Deadline for Response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (Docket No. 17), will be DENIED as moot.

## CONCLUSION

For the foregoing reasons, the Court will GRANT Defendant's Motion for Summary, DENY Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, and DENY as moot all other pending Motions. An appropriate Order will issue concurrently with this Opinion.

Date:

cc:     Plaintiff Michael Force, *pro se*
        Counsel for Defendants